UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| CALVIN TATE, § § Plaintiff, § § v. § § § § TRANS UNION LLC and NATIONSTAR § MORTGAGE LLC, § § § Defendants. § § | Civil Action: 3:23-cv-1499 With Jury Demand Endorsed |

# COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Calvin Tate ("Plaintiff"), by and through counsel, for his Complaint against Defendants, Trans Union LLC, and Nationstar Mortgage LLC, jointly, severally, and in solido, states as follows:

## I. INTRODUCTION

1. One Defendant is a consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f), and Defendant, Nationstar Mortgage LLC is a furnisher of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Nationstar Mortgage LLC is also liable for violating the Real Estate Settlement

Procedures Act ("RESPA"), 12 U.S.C. § 2605(e). Plaintiff seeks to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2.      Plaintiff, Calvin Tate, is a natural person residing in Knox County, Tennessee, and is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c), and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3.      Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

4.      Upon information and belief, Defendant Nationstar Mortgage LLC or Mr. Cooper, which may also hereinafter be referred to as "Nationstar," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Delaware limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 8950 Cypress Waters Blvd., Coppell, Texas 75019. Nationstar is a

"person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

5. Nationstar Mortgage LLC is a servicer as defined by RESPA, 12 U.S.C. v 2605(i)(2).

6. As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, and TransUnion.

### III. JURISDICTION AND VENUE

7. Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiff also asserts actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully requests that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

8. Venue is proper in this District, because CRA Defendants and Nationstar transact business in this District. Nationstar's headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiff's claims against Defendants occurred in the Northern District of Texas as further described.

28 U.S.C. § 1391.

9. Venue is further proper in this District, because CRA Defendants entered into agreements with Nationstar in this judicial district to receive credit reporting data concerning Plaintiff. Any and all requests to investigate Plaintiff's dispute(s) sent from the CRA Defendants as part of their reinvestigation was submitted to Nationstar's headquarters and investigated by the furnisher Nationstar using Nationstar's resources located at or closely connected to this judicial district. Nationstar managed Plaintiff's mortgage from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV. FACTUAL ALLEGATIONS

10. Upon information and belief, in or around July 2008 Plaintiff secured a mortgage for his property located at 2831 Teeple St., Knoxville, TN 37917.

11. Sometime thereafter, Nationstar Mortgage LLC acquired Plaintiff's mortgage loan and assigned loan number 62115xxxx, hereinafter ("Nationstar mortgage account").

12. On August 31, 2017, Plaintiff filed for a Chapter 13 bankruptcy. A redacted copy of Plaintiff's chapter 13 bankruptcy docket report is attached hereto as Exhibit "A".

13. On October 17, 2017, Plaintiff Chapter 13 payment plan was confirmed. *See* Exhibit "A".

14. On November 1, 2022, Plaintiff was discharged form his chapter 13 bankruptcy, and excepted from discharge Plaintiff's Nationstar Mortgage. A redacted copy of Plaintiff's Chapter 13 Bankruptcy Discharge Order is attached hereto as Exhibit "B".

15. Read in concert, Sections 1322(a)(2), 1322(b)(5), and 1328(a)(1) of the Bankruptcy

Code, bar discharging home mortgage debts in a Chapter 13 Bankruptcy.

16. On December 9, 2022, Gwendolyn M. Kerney, Trustee for Plaintiff's Chapter 13 Bankruptcy filed a Chapter 13 Standing Trustee's Final Report and Account. A redacted copy of Plaintiff's Chapter 13 Bankruptcy Trustee's Final Report and Account is attached hereto as Exhibit "C".

17. On or around January 23, 2023, Plaintiff's Chapter 13 Bankruptcy was terminated. *See* Exhibit "A".

18. Throughout Plaintiff's Chapter 13 Bankruptcy, under direct or indirect order from the bankruptcy Trustee, timely monthly mortgage payments were made to the Nationstar mortgage account.

19. After discharge, Plaintiff continued to make timely mortgage payments to his Nationstar mortgage account.

20. To this day, Plaintiff still lives in the home and makes timely and regular mortgage payments to the Nationstar Mortgage, has historically made timely and regular payments to the Nationstar Mortgage, even after Plaintiff's respective bankruptcies[1], and plans on continuing to make timely and regular mortgage payments to the Nationstar Mortgage.

21. Sometime in April 2023, Plaintiff obtained his three-bureau credit report and noticed that the Trans Union credit report(s) was not accurate. A redacted copy of Plaintiff's three-bureau credit report is attached hereto as Exhibit "D".

22. Within the Trans Union credit report Plaintiff noticed that it reported the Nationstar

---

[1] Plaintiff also filed for a Chapter 13 bankruptcy in June 2013 and was discharged in November 2015 after successful completion of the payment plan. Bankruptcy Pet. No. 3:13-bk-32410-SHB.

mortgage account without the correct update that indicated that this secured debt was no longer part of the bankruptcy, as having a $0 balance and payment amount, as derogatory, as being in a wage earner plan and with references to the Chapter 13 Bankruptcy. The reporting is incorrect because Plaintiff complied with the terms of the chapter 13 bankruptcy plan, was successfully discharged—excepted the secured Nationstar mortgage debt from being discharged, therefore, any remarks and/or references to Plaintiff's chapter 13 bankruptcy should have been removed from the Nationstar Mortgage tradelines after the Bankruptcy was discharged. [2]

23. Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

24. In or around May 2023, Plaintiff sent a direct dispute to Trans Union and requested that the CRA Defendants investigate the reporting of the Nationstar mortgage account by sending a

---

[2] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

copy of the dispute to Nationstar. Plaintiff requested that under the FCRA, the CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit reports concerning the Nationstar mortgage account.

25. Within this dispute letter, Plaintiff described in great detail the issues and the misreporting following his bankruptcy and enclosed copies of either his bankruptcy docket report, trustee final report, and/or discharge order. A redacted copy of Plaintiff's unsigned dispute letter sent to Trans Union is attached hereto as Exhibit "E".

26. Trans Union responded to Plaintiff on May 25, 2023 and concerning the Nationstar tradeline deleted rather than modified his active mortgage loan despite being discharged from chapter 13 bankruptcy and still making payments on his mortgage. A redacted copy of Trans Union's Response to Plaintiff is attached hereto as Exhibit "F".

27. Trans Union's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the Nationstar tradeline and gave no explanation as to why it failed to sufficiently update the Nationstar tradeline when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, was successfully discharged, and continued to make payments on the Nationstar Mortgage and Nationstar Mortgage accounts because it was still open following the bankruptcy discharge.

28. Plaintiff sent a very clear dispute(s), and yet Trans Union made no changes to the disputed information, bankruptcy status, and/or account status.

29. Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and inappropriately deleted Plaintiff's Nationstar account.

30. Upon the Plaintiff's request to Trans Union for verification and addition regarding the Nationstar mortgage account, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence. Importantly, Trans Union failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff with a response communicating the results. Further, Trans Union did not make any attempt to substantially or reasonably verify the Nationstar Mortgage account.

31. In the alternative, and in accordance with Trans Union's standard procedures, Trans Union failed to contact Nationstar, therefore, failed to perform any investigation at all.

32. In the alternative to the allegation that Trans Union failed to contact Nationstar, it is alleged that Trans Union did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

Qualified Written Requests for Information and Notices of Error

33. In May 2023, Plaintiff sent a "qualified written request" and a "notice of error" letter (hereinafter, "RESPA QWR and NOE") directly to Nationstar to investigate its servicing practices and reporting of the Nationstar mortgage account, and asked Nationstar to provide information and respond with any findings of any errors.

34. Plaintiff sufficiently identified himself as a borrower and asked Nationstar to investigate its servicing and reporting of the Nationstar mortgage account and asked them to provide information and fix any errors.

35. A redacted copy of Plaintiff's unsigned RESPA QWR and NOE to Nationstar is attached hereto as Exhibit "G".

36. On May 26, 2023, Nationstar responded to Plaintiff's QWR and NOE concerning

the Nationstar tradeline and failed to make any servicing changes or reporting corrections. Notably, they merely stated in pertinent part, that they had not reported negatively since the payments had been made on time post discharge. Nationstar did not address the fact that Plaintiff owed a balance and that his mortgage still had reported bankruptcy indicators and a derogatory account rating. A redacted copy of Nationstar's RESPA response regarding the Nationstar mortgage account is attached hereto as Exhibit "H".

37. Nationstar's responses, or lack thereof, did not satisfy its obligations under RESPA and failed to fix errors that it knew existed on this active loan that they currently service in further violation of RESPA.

## V. GROUNDS FOR RELIEF

### COUNT I – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

38. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

39. Trans Union violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

40. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

41. Plaintiff furnished Trans Union the necessary documentation supporting Plaintiff's tradeline, yet Trans Union continued to prepare a patently false consumer report concerning Plaintiff.

42. Despite actual and implied knowledge that Plaintiff's credit reports were and are not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

43. After Trans Union knew or should have known Plaintiff's account status in relation to his bankruptcy was inaccurate, they failed to make the corrections. Further, Plaintiff did not request for the Nationstar mortgage tradeline be deleted.

44. As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

45. Trans Union's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

46. The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**COUNT II – TRANS UNION'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

47. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

48. Trans Union violated § 1681i by failing to update inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit

files, and relying upon verification from a source it has reason to know is unreliable.

49. As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

50. Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

51. The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**COUNT III – NATIONSTAR'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681s-2(b))**

52. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

53. Defendant Nationstar violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

54. Nationstar further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Nationstar representation within Plaintiff's credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the

Plaintiff's dispute(s) of the Nationstar representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Nationstar representations to the consumer reporting agencies.

55. As a result of Nationstar's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

56. Nationstar's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

### COUNT IV – NATIONSTAR'S VIOLATION OF RESPA

57. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

58. Under RESPA section 2605(e) and the implementing regulations, a servicer must conduct a reasonable investigation of the errors identified in the borrower's notice and make all appropriate corrections to the account.

59. Nationstar has negligently and/or willfully violated section 2605(e) by failing to conduct a reasonable investigation of the errors brought to its attention by Plaintiff's request, correct the account accordingly, and left the account riddled with errors.

60. Nationstar further violated § 2605(e) by failing to credit late charges and/or penalties as required under subsection (2)(A).

61. Nationstar violated § 2605(k) by failing to respond and/or take timely action to Plaintiff's request as required under subsection (1)(C).

62. Nationstar's failure to respond, conduct a reasonable investigation and make the appropriate corrections to Plaintiff's account, as well as credit late fees and/or penalties, has proximately caused Plaintiff's damages.

63. Defendant Nationstar is therefore liable to Plaintiff for statutory and actual damages as provided in 12 U.S.C. § 2605(f).

64. Plaintiff is also entitled to recover reasonable attorney's fees and costs expended in this proceeding from Nationstar as provided in 12 U.S.C. § 2605(f).

## VI. VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

65. Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII. DAMAGES

66. Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Texas.

67. Plaintiff respectfully requests that this Honorable Court award Plaintiff his litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA, RESPA, and/or other laws.

68. The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

69. Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiff and have been a substantial factor in causing credit denials and other damages.

70. Plaintiff suffered a variety of damages, including economic and non-economic damages as prayed for herein.

71. Defendants have negligently and/or willfully violated various provisions of the FCRA, and Nationstar has violated RESPA, and are thereby liable unto Plaintiff.

72. Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiff, Calvin Tate, prays that this Honorable Court:

A. Enter Judgment in favor of Plaintiffs and against Defendants Trans Union LLC and Nationstar Mortgage LLC, jointly, severally, and in solido, for all reasonable damages sustained by Plaintiff, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, Nationstar's violation of RESPA, applicable state law, and common law;

B. Find that the appropriate circumstances exist for an award of punitive damages to Plaintiff;

C. Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

D. Order that the CRA Defendants, Trans Union LLC, and Furnisher Defendant, Nationstar Mortgage LLC, work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiff and/or any of Plaintiff's personal identifiers.

E. Grant such other and further relief, in law or equity, to which Plaintiff might show he is justly entitled.

Date Filed: <u>July 6, 2023</u>

        Respectfully submitted,

        <u>/s/ Matthew P. Forsberg</u>
        Matthew P. Forsberg

TX State Bar No. 24082581
Matt@FieldsLaw.com
FIELDS LAW FIRM
9999 Wayzata Blvd.
Minnetonka, Minnesota 55305
(612) 383-1868 (telephone)
(612) 370-4256 (fax)

**LAW OFFICE OF JONATHAN A. HEEPS**

/s/ *Jonathan A. Heeps*                    .
Jonathan A. Heeps
TX State Bar No. 24074387
LAW OFFICE OF JONATHAN A. HEEPS
Post Office Box 174372
Arlington, Texas 76003
Telephone (682) 738-6415
Fax (844) 738-6416
jaheeps@heepslaw.com


COUNSEL FOR PLAINTIFF

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

| | |
|---|---|
| <u>July 6, 2023</u> | <u>*/s/ Matthew P. Forsberg*</u> |
| Date | Matthew P. Forsberg |